IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael K. Miller,                              :
                            Petitioner          :
                                                :
            v.                                  :  No.  1492 C.D. 2023
                                                :  Submitted:  December 9, 2024
Unemployment Compensation                       :
Board of Review,                                :
                            Respondent          :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                                    FILED:  January 10, 2025


        Michael K. Miller (Claimant) petitions for review of the December 6, 2023

order (Order) of the Unemployment Compensation Board of Review (Board), which

reversed the decision of an Unemployment Compensation referee (Referee) finding

Claimant not ineligible for benefits under Section 402(b) of the Unemployment

Compensation Law (UC Law), 43 P.S. § 802(b).[1]  After review, we affirm.

## BACKGROUND

        HF Lenz Co. (Employer) employed Claimant full time as a fire protection

engineer.  Certified Record (C.R.) at 158.  Claimant worked for Employer from

March 30, 1991, until March 4, 2022, when Claimant resigned from his position.  *Id.*

---

[1]  Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*,
43 P.S. §§ 751 - 919.10.

On March 15, 2022, Claimant applied for unemployment compensation benefits effective March 13, 2022. *Id.* at 5. The Unemployment Compensation Service Center denied Claimant's application under Section 402(b) of the UC Law.[2] *Id.* at 20. Claimant appealed to the Referee. *Id.* at 31-34.

On August 17, 2022, the Referee held a hearing. *Id.* at 60. Employer did not appear at the hearing. *Id.* The Referee took testimony from Claimant. *Id.* Regarding why he voluntarily resigned, Claimant explained: "[T]here was a lot of harassment, abuse, and the previous owner did a lot of damage to me, I believe. And I felt no way that I could do it anymore. And I just simply had a mental breakdown, I think. And I either had to hide or quit." *Id.* at 63. Claimant explained the "verbal abuse" he suffered included other staff members making fun of things he said and did, and it resulted in him feeling as though he was never good enough. *Id.* at 63-64. After other staff members returned to work in the office following the pandemic closures, Claimant continued to work from home. *Id.* at 64. Claimant explained that during meetings other staff members asked him why he had not returned to the office. *Id.* Additionally, Claimant indicated Employer lied to him about deadlines, which caused him to work "15 hours a day, 7 days a week," with "no personal time off." *Id.* Claimant also testified he suffered from severe anxiety and depression. *Id.* at 64. When the Referee asked Claimant whether he informed Employer of the issues with his workload and lack of support before his resignation he said "yes" and explained that in response, Employer "held back important project information, increased the workload, and then gave [him] zero competent help." *Id.* at 65.

---

[2] 43 P.S. § 802(b). Section 402(b) of the UC Law, 43 P.S. § 802(b), provides that an employee is ineligible for unemployment compensation for any week where his unemployment is the result of his voluntary work departure without a necessitous and compelling cause.

Following the hearing, the Referee found over the course of several years of employment with Employer, Claimant experienced harassment and verbal abuse at work. *Id.* at 96. The Referee found Employer gave Claimant incorrect deadlines requiring him to work up to 7 days per week and sometimes 15 hours per day. *Id.* The Referee noted Claimant suffered from anxiety and depression, and Employer did not make a supervisor available to Claimant to whom he could report his elevated stress levels. *Id.* The Referee determined Claimant asked Employer for help with his increased workload, constant bullying, and harassment, but Employer failed to address Claimant's requests. *Id.* The Referee found that by March 3, 2022, Claimant resigned because he could no longer tolerate the harassment and verbal abuse he experienced at work. *Id.* Based on these findings, the Referee concluded Claimant was not ineligible for benefits under Section 402(b) of the UC Law because Claimant left work for a necessitous and compelling reason based on health-related work problems caused by his work environment. *Id.*

Employer appealed to the Board. The Board remanded the matter to accept testimony regarding Employer's failure to appear at the hearing before the Referee. *Id.* at 126. Employer's human resource manager (HR Manager) testified Employer did not appear at the hearing because after the HR Manager requested a continuance of the originally scheduled hearing, the HR Manager did not receive notice of the rescheduled date. *Id.* at 144. The HR Manager received notice after the Referee held the hearing and issued a decision. *Id.* Concluding Employer's HR Manager did not receive notice of the hearing, the Board considered the HR Manager's testimony on the merits. *Id.* at 159.

In relevant part, Employer's HR Manager testified that before Claimant's resignation, Claimant never reached out to Employer about any accommodations,

3

disabilities, or medical conditions. *Id.* at 150. Before his resignation, Claimant did not request a leave of absence or request to use personal or sick time. *Id.* During the year before his resignation, the HR Manager met with Claimant and the principal in charge of Claimant's team, and, at that time, the HR Manager directed Claimant to reach out to the HR Manager regarding any questions or concerns he had about his employment. *Id.* Claimant never reached out to the HR Manager with any questions or concerns. *Id.* at 151. The HR Manager testified that Claimant's department was busy, and Employer hired a lot of various levels of engineers, drafters, and designers to meet the influx in projects and work. *Id.* at 152.

On cross-examination, Claimant admitted he never requested a leave of absence and never submitted any medical documentation requesting any accommodations. *Id.* at 147. Additionally, Claimant never asked for any modifications to his schedule. *Id.* Claimant agreed Employer directed him to bring up any concerns or questions to Employer's HR Manager, and he never did so. *Id.* at 148. Finally, Claimant declined to complete an exit interview or meet with the HR Manager after turning in his resignation. *Id.*

After the hearing, the Board issued its Order reversing the Referee's decision and denying Claimant unemployment benefits. The Board noted Claimant initially testified he had informed Employer of issues with workload and a perceived lack of support, and Employer responded by increasing his workload and providing no competent help. *Id.* at 160. However, at the second hearing, Claimant agreed that before his resignation, he never requested leave or an accommodation from Employer, he never provided Employer with any medical documentation supporting an accommodation, and he never addressed any questions or concerns to Employer's HR Manager. *Id.* Further, the Board credited the HR Manager's testimony that

4

Employer hired additional staff for Claimant's department in the year before his resignation and offered Claimant the help of another team member. *Id.* The Board noted Claimant admitted Employer offered him help with the workload. *Id.* The Board resolved all conflicts in the testimony in favor of Employer and rejected Claimant's testimony because "he agreed, in large part, that he never communicated any concerns about a health condition to [Employer] and failed to request accommodation or utilize assistance provided." *Id.* Therefore, the Board concluded the evidence did not establish Claimant had adequate health reasons to justify his separation or that Claimant communicated any health reasons to Employer. *Id.* Thus, the Board reversed the Referee. Claimant now appeals to this Court.

On appeal, Claimant argues the Board erred by finding he did not have a necessitous and compelling reason for quitting because a number of issues led to his resignation including issues with staff and his Employer, as well as health problems caused by his work. Claimant's Br. at 13. In response, Employer asserts the Board properly concluded Claimant is not entitled to unemployment compensation benefits because Claimant failed to communicate any concerns about his work environment or medical conditions to Employer, and, therefore, Claimant made no effort to maintain his employment before he resigned. Employer's Br. at 5.

## DISCUSSION

In reviewing a Board's order, this Court considers "whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed." *Showers v. Unemployment Comp. Bd. of Rev.*, 64 A.3d 1143, 1146 n.4 (Pa. Cmwlth. 2013). Whether a claimant had a necessitous and compelling reason to terminate his employment is a question of law subject to our plenary review. *Tewell v. Unemployment Comp. Bd. of Rev.*,

5

279 A.3d 644, 652 (Pa. Cmwlth. 2022). The Board is the ultimate factfinder in unemployment compensation cases and is empowered to make credibility determinations. *McCarthy v. Unemployment Comp. Bd. of Rev.*, 829 A.2d 1266, 1269-70 (Pa. Cmwlth. 2003). So long as the record, taken as a whole, contains substantial evidence to support the Board's findings, those findings are conclusive on appeal. *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). Substantial evidence is such "relevant evidence upon which a reasonable mind could base a conclusion." *Id.*

Under Section 402(b) of the UC Law, an employee is ineligible for unemployment compensation benefits if he voluntarily quits his job without a necessitous and compelling cause. 43 P.S. § 802(b). This Court has explained a claimant bears the burden of proving his reason for voluntarily terminating his employment was due to a necessitous and compelling cause. *PECO Energy Co. v. Unemployment Comp. Bd. of Rev.*, 682 A.2d 58, 60 (Pa. Cmwlth. 1996). A necessitous and compelling cause is one that "results from circumstances which produce pressure to terminate employment that is both real and substantial[] and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 832-33 (Pa. 1977). To satisfy this burden, a claimant must show (1) the existence of real and substantial pressure to terminate employment; (2) he acted with ordinary common sense; (3) a reasonable person would have acted in the same manner; and (4) he exercised reasonable efforts to preserve his employment. *Greenray Indus. v. Unemployment Comp. Bd. of Rev.*, 135 A.3d 1147, 1151 (Pa. Cmwlth. 2016).

Here, Claimant argues he had necessitous and compelling cause to terminate his employment due to his work environment and health issues. Notably, "[m]ultiple

causes, which as individual causes are not necessitous or compelling, do not in combination become necessitous and compelling." *Spadaro v. Unemployment Comp. Bd. of Rev.*, 850 A.2d 855, 860 (Pa. Cmwlth. 2004). Therefore, we consider Claimant's work environment and his health issues in turn.

First, we address whether Claimant's work environment constituted necessitous and compelling cause to terminate his employment. It is well settled that mere dissatisfaction with work assignments, working conditions, or personality conflicts are not necessitous and compelling causes to terminate one's employment. *Spadaro*, 850 A.2d at 860 (citation omitted). Additionally, we note that an "uncomfortable" workplace is not the same as an "intolerable" one. *Ann Kearney Astolfi DMD PC v. Unemployment Comp. Bd. of Rev.*, 995 A.2d 1268, 1289-90 (Pa. Cmwlth. 2010). Pennsylvania courts have determined there are situations where workplace insults and harassment give an employee necessitous and compelling cause for quitting. For example, in *Taylor*, 378 A.2d at 829, the Pennsylvania Supreme Court concluded an employee had necessitous and compelling cause to quit his employment after his co-workers and employer repeatedly called him racially derogatory names. In *Mercy Hospital of Pittsburgh v. Unemployment Compensation Board of Review*, 654 A.2d 265 (Pa. Cmwlth. 1995), this Court concluded an employee had necessitous and compelling cause to terminate his employment after the employee reported excessive taunting from his co-workers to his employer on numerous occasions, and the harassment continued.

Generally, for a claimant to successfully demonstrate harassment that constitutes good cause for terminating employment, the claimant must show he informed his supervisor of the existence of such harassment. *Colduvell v. Unemployment Comp. Bd. of Rev.*, 408 A.2d 1207 (Pa. Cmwlth. 1979). However,

7

circumstances exist where an employee need not show he reported to his supervisor if it is clear the employer knew of the conduct and had an opportunity to address the situation yet failed to do so. For example, in *Danner v. Unemployment Compensation Board of Review*, 443 A.2d 1211 (Pa. Cmwlth. 1982), this Court reversed the Board's decision where the Board found an employee proved harassment sufficient to constitute a necessitous cause for quitting, but denied unemployment compensation benefits because the employee did not attempt to maintain the employment relationship by asking his supervisor to address the conduct. Notably, in that case, the employee alleged the supervisor had engaged in taunting and verbally abusing him. *Id.* at 1213. While the supervisor denied any abusive conduct on his part, he admitted he was aware of what the employee's co-workers were doing to him. *Id.* This Court concluded the employer was aware of the existence of the harassment and had a duty to address the situation. *Id.* Reversing the Board's decision, this Court noted the employee "was faced with an unbearable work environment which his supervisor did not correct," and by quitting, the employee acted as a reasonable person would under those circumstances. *Id.*

Here, the record demonstrates Claimant had a heavy workload due to an influx of projects within his department, Claimant had issues with his co-workers, and Claimant was offended by his co-workers' comments on his decision to work from home rather than return to the office. On cross-examination, Claimant conceded that he never sought an accommodation or modification of his schedule, he worked from home for the last year of his employment, Employer offered him assistance with his workload, and Claimant never informed the HR Manager of any harassment as directed by Employer. *See* C.R. at 147-48. The HR Manager also testified Claimant did not inform Employer he was being harassed by his co-workers. Therefore, the

8

Board's finding that Claimant failed to inform Employer of any alleged harassment or verbal abuse is supported by substantial evidence in the record. Because a claimant who does not take all necessary and reasonable steps to preserve his employment cannot meet his burden of demonstrating necessitous and compelling cause, *PECO Energy*, 682 A.2d at 61 (citation omitted), we cannot conclude Claimant's work environment constituted necessitous and compelling cause to terminate his employment.

Next, we consider whether Claimant's medical conditions constituted necessitous and compelling cause to terminate his employment. Where a claimant cites medical conditions as a necessitous and compelling reason for terminating his employment, this Court has explained:

> In general, a medical condition that limits an employee's ability to perform work duties can provide a necessitous and compelling reason to quit one's employment. *Genetin v. Unemployment* [*Comp. Bd. of Rev.*, 451 A.2d 1353, 1355 (Pa. 1982)]. In such situations, the employee is obliged to communicate his or her medical problem to the employer, but is not required to attempt "to initiate or effectuate the transfer to more suitable work." *Id.* at 1356. Thus, to establish that a medical condition is a necessitous and compelling reason for the voluntary termination of one's employment, a claimant must: (1) establish, through competent evidence, the existence of a medical condition; (2) inform the employer of the condition; and (3) be able and available to work if a reasonable accommodation can be made. *Id.*

*St. Clair Hosp. v. Unemployment Comp. Bd. of Rev.*, 154 A.3d 401, 405 (Pa. Cmwlth. 2017). A claimant's failure to prove any of these three elements set forth above bars a claim for unemployment compensation benefits. *Ann Kearney Astolfi*, 995 A.2d at 1290 (citation omitted). Furthermore, while emotional and psychological stress can constitute adequate health reasons to terminate one's employment, *see Beattie v. Unemployment Compensation Board of Review*, 500 A.2d 496, 498 (Pa. Cmwlth.

1985), a claimant who desires to quit a job for health reasons still has a duty to communicate the health problems to his employer so the employer can attempt to accommodate the problem. *Blackwell v. Unemployment Comp. Bd. of Rev.*, 555 A.2d 279 (Pa. Cmwlth. 1989); *Lee Hosp. v. Unemployment Comp. Bd. of Rev.*, 637 A.2d 695, 698-99 (Pa. Cmwlth. 1994).

Here, the Board found Claimant did not communicate his medical conditions to Employer. Claimant did not request leave or an accommodation from Employer, and Claimant did not provide any medical documentation supporting the need for an accommodation to Employer. These findings by the Board are supported by substantial evidence in the record and, therefore, they are conclusive on appeal. Accordingly, because Claimant failed to communicate his health problems to Employer so Employer could attempt to accommodate the problems, Claimant did not meet his burden of demonstrating his medical conditions constituted a necessitous and compelling reason for terminating his employment.

## CONCLUSION

Because Claimant failed to notify Employer of any verbal abuse or harassment he faced or of his medical conditions before he voluntarily resigned from his employment, neither Claimant's work environment nor his medical conditions constituted a necessitous and compelling reason for Claimant to terminate his employment. Accordingly, we discern no error in the Board's Order.

_____
STACY WALLACE, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael K. Miller,                          :
                          Petitioner        :
                                            :
          v.                                :  No.  1492 C.D. 2023
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                          Respondent        :


# **O R D E R**


**AND NOW**, this 10th day of January 2025, the December 6, 2023 order of the Unemployment Compensation Board of Review is **AFFIRMED**.


_____
STACY WALLACE, Judge